Good morning, Your Honors, and may it please the Court. My name is Kelly Bills, and I represent Appellants Catherine Muslow and Meredith Cunningham. This appeal asks whether summary judgment was properly granted against two female in-house lawyers on their claims of retaliation and discrimination. It was not. The undisputed evidence establishes that LSU knew it was paying its female general counsel far less than LSU said her position was worth, and it knew both appellants were being paid far less than men in lower or the same pay grades. And when appellants raised gender pay equity concerns, they immediately suffered adverse employment actions, and a month later were notified that they would be terminated. In fact, they would be the only employees in the almost 100-year history of LSUHSCNO to be terminated because of so-called position retirements. Defendants proffer justifications for their actions are not legally relevant or are rife with fact issues. We ask the Court to reverse this. You don't dispute that LSU could, in appropriate circumstances, eliminate large numbers of positions? Right, Your Honor. They could have. But in this circumstance, the eliminations came immediately after plaintiffs raised gender pay equity concerns. So that's the first basis for our retaliation claim here. There are three bases provided. The very first one is that Skinner, Mr. Skinner, immediately rescinded appellants' transfer to the OGC following Ms. Muslow's email raising gender pay concerns. It's rare to have such direct evidence of retaliation, but we have it here. Mr. Skinner admitted that he stopped appellants' transfer to the OGC because of Ms. Muslow's He also admits raised gender pay concerns. In fact, he said that email was the straw that broke the camel's back because all of a sudden now we are into EEOC-type issues. It was my decision to retract those letters because I was so taken aback by Ms. Muslow's email. The very next business day after receiving this email, Mr. Skinner stopped their transition to the OGC. That establishes a prima facie case, a protected opposition activity. There's no dispute that adverse employment actions occurred for plaintiffs here. And defendants also have conceded a one business day timeline would satisfy a causal effect. You acknowledge, though, that there was a non-retaliatory reason that was given for the termination? They raised one reason, Your Honor, but we would contend it is rife with fact issues. So the one reason that is pre-retaliation is that they did not sign employment contracts by the effective date of those contracts, which was February 1st, 2019. The problem with that is the evidence does not support that failure to timely sign these contracts, particularly in the two weekend days between Ms. Muslow's email and then the retaliatory conduct was actually the reason for why there was a rescission. So if we look at LSU's own evidence and the evidence that we put before the district court, Mrs. DeWayle, who is Skinner's assistant, sent at least three emails after this so-called expiration date asking the appellants to sign what LSU now claims were expired contracts. There would be no reason for Ms. DeWayle to be asking them to sign expired contracts if LSU's excuse holds water. Beyond that, the evidence shows that appellants had already moved to the OGC. And this was supposed to be an automatic process. Mr. Skinner had already welcomed them into the OGC as early as December 2018. That's two months before the so-called effective date. That was before it was known how much of a salary increase they would be demanding. Isn't that right? Yes, Your Honor. And I would question the demand piece of that. So Ms. Muslow's email, if we look at the verbiage she uses, she says, I suggest that my salary should be in line with the market study that LSUHSC had. What kind of an increase would that have been for her? I believe the figures were 55%, but I'd have to double check that, Your Honor. It was a significant increase, but it was also a significant amount of underpayment based on her pay grade and her level of experience. So she should have been at the very top of her pay grade. Instead, she was at the very minimum. In fact, she was initially raised below the minimum of her pay grade, despite LSUHSC and OHS HR director saying that was not acceptable. And so if we look at this idea of shock, it also contradicts the reason that Mr. Skinner initially gave. When he forwarded Ms. Muslow's email to Mr. Ollier, he only said her contract expired. He said nothing about the salary request and the market study again, which he had access to and that Ms. Muslow had attached to her email, completely supported what she was asking for and was right in the range. And the other piece of that is that when we look at Mr. Coletta, he was not treated the same way. So when he asks for a raise, he's not terminated immediately. He gets one. And so a jury could very easily disbelieve that a larger than expected salary request should result in immediate termination. Instead, Mr. Skinner's own words say it was because she raised gender pay disparity issues in this email, and now we're into EEOC type issues. It's a rather remarkable statement. It's a rather remarkable statement, Your Honor. Normally, we don't have such direct evidence, and we have it here. And so that's the very first pathway. There's fact issues across the board on really the only reason that they've given, which is that this effective date is actually an expiration date. And I would like to just go back quickly on that. Yes, Your Honor. Are there any other people who didn't sign their contracts in time? Your Honor, I don't believe there's any in the record. We did raise Mr. Jones, who was also transitioned over, and he did not apply for his position until well after appellants were supposedly supposed to sign these contracts as well. But I think the timeline shows this was all an automatic process. They were already— Is there a case or something that says within a month, certainly, is that— Oh, yes, Your Honor. The cases are legion on retaliation, that a one-day time frame or even a month time frame. It's going into when you're looking at more three, four, or five months that the causal link becomes more tenuous. But here, there really is no dispute about causal link, nor is there a dispute about adverse employment action. And so on that first basis alone, there was no reason to grant summary judgment on the retaliation claims, and that itself would warrant reversal. But we also raised two other bases. I'd just quickly note, appellants were denied requested raises, which itself can be a retaliatory action, and this was never addressed by defendants in their briefing. It was raised in summary judgment. And the third basis, really the only disputed one here, is that appellants received their official termination notices after they filed their EEOC charges. There is a fact question on the only justification defendants gave, which is the timing of the termination letters as opposed to when the EEOC charges were filed. The communications up to that point all indicated this was an automatic process. They had already been welcomed. They had already received work assignments. Mr. Skinner had welcomed them. Mrs. DeWaley had welcomed them. They fully thought they were integrated into the OGC. Mr. Ollier contended that after January 1st, they were part of the OGC. And Ms. Muslow's March 6, 19 email expressed confusion about the status of their positions and their transfer. You started with the retaliation. Yes, Your Honor. Do you think that's the best claim? Your Honor, I think it's a very clear, with the first basis, it's a very clear pathway. And then if we get to discrimination, we believe those claims are just as strong. Your Honor? Where is the male comparator? Your Honor, I think, and we'll turn to EPA first, if that's okay. So in EPA, we have two different pathways there as well. The first one is less money for more work. The CFRs, which are entitled to great deference, the Code of Federal Regulations, establishes that it is- The question you were asking is, where is the male comparator? Who is the male comparator? That was the question. Yes, Your Honor. And the male comparators come from individuals who are in lower pay grades who made more money than appellants. So that's that less for more pathway. Who are they? What are their names? Sure. So we have, for Ms. Muslow, we have Edwin Murray. He was an N41, so he was two pay grades below Ms. Murray. He had only two years of experience. He made at least $20,000 more than Ms. Muslow did. And he was in the third quartile of his pay grade for someone with 10 to 15 years of experience, even though he only had two. Again, when we look at Ms. Muslow, she was in a higher pay grade. She had 15 plus years of experience. She was at the very, very bottom of her pay grade. We also have individuals like Timothy Fair. He's an N39 who made more than Ms. Muslow. We have Mr. Cairo, an N41. We have Mr. Coletta, even as chief of staff. He was an N41, paid in the third quartile of his pay grade, and yet he had little to no experience when he was hired. For Ms. Cunningham, we have Mr. Bueller. He was in a lower pay grade, N35, no JD required, made $25,000 more than Ms. Cunningham. And then we have Mr. Wasser, who was in the exact same pay grade, required a JD degree, compliance responsibilities, just like Ms. Cunningham, hired after her, and yet made almost $25,000 more than she did in the middle of his pay grade when he should have been at the very, very bottom. We named a number of other comparators, including individuals who are in one pay grade above Ms. Muslow, so in the N44 pay grade. Those individuals, we believe this Court should consider as well when we look at the fact that the N43 pay grade that Ms. Muslow was assigned to had two and only two women in it. And Ms. Muslow was assigned to the N43 pay grade based on a staff attorney position description that did not describe her position as general counsel. So the N44, just one pay grade above Ms. Muslow, we can look at individuals like Mr. Schroth, who was initially in a lower pay grade than Ms. Muslow. He was then moved to N44, and he was paid near the very, very top of his pay grade. He made $170,000 more than Ms. Muslow with less experience. And Mr. Smith, also in N44, had two years of experience. He was in the very middle of the pay grade, and yet he made $100,000 more than Ms. Muslow. And finally for Ms. Muslow, we have her successor, Mr. Coletta. There's no dispute that he did take the position that Ms. Muslow was supposed to transition to until Mr. Skinner immediately rescinded her transition after she raised gender pay disparity concerns. He initially made more than Ms. Muslow did until her raise in mid-July 2017, despite, again, his lack of experience and her more than 15 years of experience. And when he asked for a raise, this is really important on the disparate treatment across the board. When he asked for a raise, he was not immediately terminated. He got one. And within a year, he was allowed to not only get a raise, but craft a tailor-made position for himself, making $20,000 more than Ms. Muslow ever did, and getting a car allowance. So this new chief of staff position in a lower pay grade, we would contend there's at least a fact issue on whether it constitutes equal work, and that should go to the jury. And under the more lenient Title VII similarly situated standard, that position and Mr. Coletta as her successor would also meet the requirements to show a prima facie case. If we go then to EPA affirmative defenses, or on the other end, Title VII and the justifications that defendants offered, first of all on the affirmative defenses, none of them were proven as a matter of law. And we believe the district court erred here in placing any burden whatsoever on plaintiffs to disprove the affirmative defenses. The law has held for many years that it is the defendant's burden to prove so clearly that no rational juror could find to the contrary. Defendants relied almost exclusively on their market job classification system. But that is only a defense if the system is created and applied in a non-discriminatory manner. Here we know it was not. We only have to look at Ms. Muslow versus Mr. Murray. Ms. Muslow's in a higher pay grade, Mr. Murray's in a lower pay grade. Ms. Muslow has 15 years of experience, he has two. Her position requires a JD, his does not, and yet he makes at least $25,000 more than Mrs. Muslow. So seniority cannot explain the system and the reason why Mr. Murray is making so much more than Ms. Muslow. And neither can merit. The one excuse that defendants have played around with is this idea that Ms. Muslow had performance issues. The problem with that excuse is there's not a single contemporaneous document in her entire file for her 16 plus year career at LSU that corroborates that testimony. Mr. Ollier testified that there were some sorts of performance issues in there, but with no contemporaneous documentation to back that up, that raises an inference of falsity and is a fact question that should go to the jury. The other two important notes there is that Ms. Muslow was encouraged to apply for this OGC position. After, of course, that transition was rescinded because she raised gender pay concerns. She was encouraged to apply for a position enlisted as an A plus candidate. And Ollier's other female direct reports, Mrs. Coppo and Mrs. Allen received the same salary mistreatment. So they too were not bumped to the minimum of the pay grade as they were supposed to at a minimum based on the market study. Instead, they were put at the very bottom or below their pay grade. And I do, and there's no performance- I don't have time to address your claim that if this matter is remanded, Judge Ash can't be fair and therefore it should be assigned to a different judge. Yes, Your Honor. We realize the gravity of that request and that it is a very, it's not a power that's exercised with frequency. But here, based on some of the statements in the opinion, and the fact that the opinion gave defendants more than they asked for, we were concerned that though the pre-made decisions that the judge seemed to express in his opinion could not be put aside. So for example, he determined that the pay grades were not hierarchical. No one had ever disputed that the pay grades in the market study were hierarchical. And he also dismissed all the claims, EPA claims against Mr. Ollier as far as Ms. Muslow was concerned, even though Mr. Ollier never disputed his employer status as to Ms. Muslow through December 2018, so that really was the impetus of that reassignment request. And on the market study, I just quickly mention Ms. Martin's testimony, that that helps us establish this pathway. The prima facie cases on all the discrimination claims. With that, we ask the court to reverse and remand, and I'll be back up for rebuttal. Thank you. Yes, you've saved time for rebuttal. Thank you, Ms. Bills. Ms. Boyle? Good morning, your honors. May it please the court, Kim Boyle and Nan Alessandro on behalf of the Appalese LSU Board of Supervisors and Trey Jones, and I'll jump right to the retaliation claim because that appears to be where the appellant started and where the court is interested. First of all, your honor, it is important to understand that this is a summary judgment record. So much of what appellant's counsel just discussed before the court was not in the summary judgment record that they presented to the district court. So it is our position that under rule 56, under local rule 56.2, as well as under the rules of the Fifth Circuit and FRAP, that those arguments are waived. When they talked about retaliation, when they opposed the motions for summary judgment filed by LSU as well as by Mr. Jones, they devoted only three paragraphs, literally only three paragraphs, in their oppositions. So all of this discussion about pretext, direct, etc., that was not in there. And it certainly was waived for purposes of the Fifth Circuit. But to get to the actual substantive issue related to retaliation, your honor, as the court is fully aware, Judge Ash, the district court judge, issued an 84 page order and reasons where he went through detail what the relevant legal standard was for each cause of action asserted by the plaintiffs and what the case law under the Fifth Circuit and the district courts in the Eastern District as well as Texas said. And here we have a situation where we fall clearly within Fifth Circuit case law as to why plaintiffs have not stated a retaliation claim against LSU and Trey Jones. First of all, the complete reliance upon the 2017 market study by the appellant is legally irrelevant as it relates to the appellant's transfer to the Office of General Counsel. Plaintiffs are relying upon a 2017 market study that was commissioned by and only applied to LSU Health Sciences Center, New Orleans. That's what it applied to. Plaintiffs were transferring to, had not transferred to yet. And the evidence and the record evidence on summary judgment makes this clear. Plaintiffs had not transferred to the OGC and in fact, that's evident by their EEOC charges because they said their employer was LSU Health Sciences Center, New Orleans. But be that as it may, when they were transferring, in the process of transferring to, had they executed their employment contracts, that the 2017 market study was of no relevance whatsoever. They were offered an employment contract at a higher salary than OGC, as well as Human Resources in Baton Rouge said was appropriate for the new position of Chief Counsel for Ms. Muslow. She was going from being the General Counsel at the New Orleans Health Sciences Center, to being Chief Counsel under the ambit, under the jurisdiction, under the authority of Skinner, who was the General Counsel, as well as Mr. Jones, who was the Deputy General Counsel. Is there evidence in the record that Skinner says he stopped the process because of her email raising EEOC claims? There is deposition testimony from Mr. Skinner about that. But as the court is aware, in the order and reasons, Judge Asch, the district court judge said, there was no specific record citation, it was miscited, and he really couldn't find it. But he gave the plaintiffs, he gave the appellants the benefit of the doubt and said, okay, I'm going to assume that there is a prima facie case related to retaliation. But notwithstanding that I'm going to assume that there's a prima facie case, I'm going to assume that there was protected activity. And he did say that it was suspect as to whether or not the plaintiffs actually engaged in protected activity. Because of this issue of 2017 market study for general counsel, but- Regardless, if it says that we think that there are issues about pay disparity between men and women, that is raising protected activity, regardless of whether it references something that's irrelevant or not. It's just the issue of men versus women and pay. Well, Your Honor, bottom line is, as the court is aware, it has to be objectively reasonable. And the district court judge said for purposes of argument, it was objectively reasonable. And then we look to see if there's pretext, what's the reason for not signing the contract? And don't we have cases that say if it's within 30 days, that that will create the fact issue? Your Honor. Timing between the prima facie case and the alleged legitimate reason. Your Honor, that creates an issue for a prima facie case. It does not create an issue once the court finds that the plaintiff has met a prima facie case and the plaintiff has the stringent burden of showing pretext at that point. Once we get to that stage, once LSU has put forth its legitimate, non-retaliatory reasons, which it did in detail, then the plaintiffs were required to rebut and refute with substantial evidence every single legitimate, non-retaliatory reason that LSU put forward. Then, after LSU met its burden of production, not persuasion, because the burden of proof remains at all times with the plaintiff. Once LSU met its burden of production, not persuasion, then the burden fell on plaintiffs stringently to show pretext. And as this court said in 2022, in the Wanto versus Walmart case, that if the person would have been the subject of adverse employment action, notwithstanding any alleged protected activity, because remember we're dealing with but-for causation under the Supreme Court's holding in Nassar. If the person would have been subject to the same adverse employment action under Nassar, by the United States Supreme Court, as well as by this court in 2022 under Wanto versus Walmart, then there is not retaliation as that term is defined under Title VII and under the Fifth Circuit jurisprudence, and that is the situation that we have here. Plaintiffs did not, could not meet their burden, their stringent burden of showing pretext for purposes of the retaliation claim, Your Honor. Now, getting to the claims under the Equal Pay Act, as well as under Title VII for wage discrimination, Your Honor, basically everything that the appellants just stated as relates to the legal standard under the case law is not accurate. The Equal Pay Act makes it very clear that it has to be equal effort, equal skills, equal responsibilities, similar working conditions where the positions are nearly identical. That is the language, nearly identical. So we have a situation where Ms. Muslow, who was general counsel only at the LSU Health Sciences Center in New Orleans, where one person, one part-time staff person, the other plaintiff, Ms. Cunningham, reported to her for a five-year period. She's saying that it took equal skill, equal work, equal responsibilities, compared to Jimmy Cairo, who's the dean of the School of Allied Health. He has responsibilities as it relates to accreditation, to research, to fundraising, all of the things that fall within a dean. She's saying that she has equal skill, work, responsibilities related to Steve Nelson, who's dean of the School of Medicine. She's saying that she meets the standard for the EPA related to Ed Murray, etc. Clearly, and the court can look at the very detailed analysis by the district court judge on this. He went through every single alleged comparator. First of all, several of them, six of them made less money than Ms. Muslow made. So as a matter of law, those six could not be actual comparators. But then he analyzed the other four that she identified, then he went into ones that she did not identify. As it relates to the standard under Title VII, the standard under Title VII is very clear, similarly situated. The plaintiff has to show not only that they fall within a protected class, that they're qualified for the position, that there was an adverse employment action. But they have to show that similarly situated comparators were treated more favorably than them. And the law in the Fifth Circuit is very clear, your honors. When you're talking about similarly situated, you are talking about almost the exact same job with the same supervisor. And as the court stated, and as the court found in its 84 page order and reasons, under no set of circumstances did Ms. Muslow or Ms. Cunningham in any way meet that standard. Now it's a red herring. Appellant's counsel keeps talking about Louis Collada. The record evidence for purposes of summary judgment, because that's the only thing we are talking about, is the summary judgment record evidence here, your honor. The record evidence shows that Mr. Collada was hired as the chief counsel under the OGC at a salary of approximately $182,000. Ms. Muslow keeps continuing to try to bring in Mr. Collada's later status as chief of staff to support her- Your time has expired, Ms. Booker. I'm sorry, your honor? Your time has expired, thank you. Okay, thank you, your honor. We request that the court affirm the summary judgment rulings in favor of LSU as well as Trey Jones, your honors. Thank you. Thank you. Mr. Watson? Good morning, your honors. Craig Watson here today on behalf of Dr. Larry Ollier. I'd like to start also with the retaliation component as applied in the briefing by my opposing counsel with respect to Dr. Ollier, which is their contention that somehow this issue of backdating a report that they continually put into their brief somehow conjures an issue of fact. But the district court was clear that that was not a genuine issue of material fact. It wasn't material because the record evidence submitted established that these plaintiffs well knew that their positions were going to be eliminated far before they exercised their right through protected activity and going to the EEOC. I thought it was important enough to pull out the electronic correspondence out of the 16,000 page record in this as ROA 10698, which was a March 1st email from Dr. Ollier to Tom Skinner with a carbon copy. And I note to Kathleen Muslow and to Meredith Cunningham indicating, thank you Tom, in accordance with PM 72, New Orleans will retire our existing legal positions by June 30th, 2019. That is a full 25 days prior to their purported exercise of going to the EEOC. And therefore the court was emphatically correct when it established that plaintiffs cannot meet their prima facie case of retaliation because they cannot meet the causal element of establishing that the elimination of their position was due to their filing of the EEOC complaint. And I would submit to you, not only does the email from Dr. Ollier, Kathy Muslow responded to that email in five days later, a full 20 days before she goes to the EEOC and says, we are taken aback that the official response has been to eliminate the very positions we were assured would be transitioned to the OGC. So Kathy Muslow, Meredith Cunningham absolutely knew as early as December 2018 that these positions were going to be transferred. They knew in January they were going to be transferred and they knew through electronic correspondence and affirmation in the record that these positions. So it should be no surprise to them on March 25th when they receive the letter that says the positions are being eliminated. It was told to them not once, twice, three, four times. Therefore, the court was correct in affirming that plaintiffs failed to meet their prima facie case of retaliation against Dr. Ollier with respect to the protected activity that they purport was made. Additionally, I would like to piggyback on the issue of my opposing counsel with the proffered comparators because this is at the meat of the case. Fundamentally, your honors, Kathy Muslow, yes, she worked in the office of, she worked in the chancellor's office and she reported to Dr. Ollier, but that's simply not enough. So too did the executive assistant for Dr. Ollier reported. Where she fails and where the Fifth Circuit has affirmatively held, she has to establish that the position that she seeks to proffer as a comparator be substantially identical. The US Congress had the opportunity to make it a much more lenient standard to side with Muslow's counsel on this. But instead, they removed the word comparable positions and they included the word equal in the amendment to the statute. And therefore, this court has before it a decision to make as to whether the district court went through the four comparators. Because as we noted, six of them made less money, they're out the window. And he went through each, and the comparison, she simply, as much as she wants to, she has a different degree. She had a different curriculum, she had a different career path. She is not a dean, she does not have 30 people reported, she is not responsible for accreditation. She has no budgetary responsibilities. It's extremely important to know that Kathy Muslow was a chief counsel, she was not a vice chancellor. She was, and I repeat, responsible for one part-time employee. The purported comparators were responsible for teams and legions of people in a multi-hundred million dollar enterprise, seeking to promote the interest of the LSU Health Science Center. And for those reasons, we would respectfully request that this court affirm the well-thorough reasoned 84-page opinion of Judge Barry Ashe. Thank you for your time. Thank you, Mr. Watson. Mr. Farenholt? Good morning, and may it please the court. Greg Farenholt on behalf of Thomas Skinner. I've heard Thomas Skinner's name a lot today. He's certainly a witness to any potential Title VII claims that the plaintiffs may have against LSU. But the issue, as far as Thomas Skinner as a defendant, is whether he is an employer under the Equal Pay Act. This court applies an economic realities test to determine whether an individual has sufficient operating control over employees to be an employer and thus subject to an EPA claim. The district court found that the plaintiff satisfied none of those factors. And the law provides that you don't have to satisfy all of the factors, but to satisfy none of the factors should be dispositive and he should be dismissed as a defendant. He didn't hire the plaintiffs. The records show he didn't fire the plaintiffs. He didn't supervise the plaintiffs. He met the plaintiffs once in his entire stay at LSU. Did he have the decision making power over whether they would have their positions transferred to the GC's office? Did he have final decision making authority over that? He did not. The President of LSU had that authority and it was set forth in PM 72. PM stands for President or Presidential Memo. He made that recommendation to the President, but he, again, couldn't single handedly have decided to transfer them without the President's authority. It's briefed a lot that the individual defendants are all pointing fingers at each other and one of them must be an employer under the EPA, but that isn't necessary. We know who the employer of the plaintiffs was. It was LSU. LSU was Thomas Skinner's employer. LSU was Dr. Olier's employer. LSU was John Harmon's employer. So is it the President or the Board? I can't remember how it's structured at LSU. I'm sorry, what is your question? Who is the final decision maker, the President or the Board? The President? As far as the decision to transfer the positions to the Baton Rouge campus, that was the President's decision through the enactment of PM 72. And he's not a defendant in this lawsuit. It's not surprising in an institution the size of LSU and the fact that it's a public government institution that there wouldn't be one person generally that has complete control over these employees. There's obviously a lot of bureaucracy there as the Board that you have to report to. If anyone would have that power, it would be the President. And he is not named as a defendant. So based on that, we would request that the dismissal of Thomas Skinner individually in the claim against him under the EPA be affirmed. Thank you, Mr. Farrell-Holt. Mr. Patan? Good morning, Your Honors. May it please the Court, Darren Patan here on behalf of Defendant John Harmon. The claims against Mr. Harmon are two, an EPA claim, as well as a derivative claim under Section 1983. And those claims apply the same standard and require a showing of intent to end causation of discriminatory deprivation of a constitutional right. And as Judge Ash correctly and thoroughly spelled out in his ruling, Mr. Harmon submitted evidence sufficient to satisfy the four factor test under the EPA such that he was not an employer. And that, as that term is used, under the EPA. And plaintiff produced no evidence or articulated the precise manner in which the submitted evidence supports their claim. Nothing substantive submitted or pointed to. And that is, going to Ms. Boyle's astute observation as argued earlier, argument not evidence, and what is before this court for purposes of the record evidence is the record that was before the court on the motion for summary judgment. There can be no dispute that Judge Ash was thoroughly reviewing the facts and gave a detailed and cogent position with regards to Mr. Harmon not being an employer. And as it relates to the 1983 claim, there is argument with regards to the ministerial exception. But there is no argument that Mr. Harmon's acts or the acts that are alleged to have been taken by Mr. Harmon. And against the plaintiffs were non-executory actions. And to plaintiff's case site with regards to Pierce, which is cited to suggest that the ministerial exception is narrow. Contrary to plaintiff's argument, that affirmative defense requires proof from the plaintiff and not the defendant in order to establish it. Pierce holds that the assertion of the defense requires proof from the plaintiff that a clearly established right was violated. This burden is not on the defendant and none was shown. The other argument that plaintiff put forth in their case with regards to the Arias case is that with regards to the definition of employer, Arias dealt with a FLSA claim and not an EPA claim. And those interpretations, as Mr. Farenthold pointed out in his argument on behalf of Mr. Skinner, are not the same. With that, your honors, we ask that this court affirm the summary judgment in favor of Mr. Harmon and continue the dismissal. Thank you. All right, thank you, Mr. Patel. Ms. Bills for rebuttal. Thank you, your honors. I'd like to start with waiver. First of all, it's very telling that they have not identified a single argument or single piece of evidence they say was not before the district court. And that's because everything that is in the briefs and all the evidence that was raised was before the district court. In fact, Mr. Skinner's counsel did not dispute his own testimony that he said he stopped their transition to the OGC because of Ms. Muslow's email. And in fact, that testimony is cited in full in our papers, our summary judgment papers at ROA 12330. So his entire testimony, everything that I quoted, the beginning and my opening was cited in full. So there's no waiver issue here on any of the arguments that we're making. Turning to the market study, defendants have not once addressed Ms. Martin's testimony that says by grouping individuals in pay grades and job families, they were grouping similarly situated positions in people. That establishes a prima facie case at least under Title VII and also under the EPA's more for less pathway. There's no response from defendants. You've heard none about this more for less pathway, which we have argued quite extensively in our briefing. That's because the CFR say very specifically that it is no defense to an equal pay claim to say that a job is unequal because the female has more responsibilities and therefore her job is different. But she's making less money. That is no defense to an EPA claim under the CFRs where it's entitled to great deference. They have no answer to those. And they have no answer to all of the comparators we have cited to the court of individuals who are in lower pay grades and yet made more money than both Ms. Muslow and Ms. Cunningham. Also on the market study, those who made less than Ms. Muslow did, we addressed those in our brief. The majority of these individuals actually made more than her, with the exception of Mr. Bueller, but we addressed it in our brief. And under defendant's position, it would be okay to pay a female $1 less, even though she had significantly more experience and credentials than a male, and that would doom a Title VII claim. That cannot be right. And the only cases they've cited for that are district court cases. So we would contend that all of the comparators that we have presented both to the district court and to this court are proper for this court to consider. Turning to their response about, the market study, their response about equal work. What you hear over and over from defendants is that it has to be identical. That's really the standard that they're advocating that this court adopt. Actually, they said nearly identical. They said nearly identical, Your Honor. Do you disagree with that standard? We disagree with that in the Title VII context, certainly. In the EPA context, we have the equal work pathway, which is the traditional pathway, I would say. But we also have that situation where it's not a defense to pay a woman less for more work. So the EPA does talk about an equal work pathway, but it's a substantially equal. It is not identical, it is not even nearly, it's substantially equal. So any differences that can be discarded because they really aren't relevant to the job function do not satisfy that standard. And what defendants would have this court hold is that there is not a single comparator for either Ms. Muslow or Ms. Cunningham in the entire organization. That's their position, and that's what they would like this court to hold. And again, that bars a highly qualified female employee of an organization from a Title VII or an EPA claim at the gates. But this court and courts across the country, including the Supreme Court, have said at least in the Title VII context, putting aside the more for less pathway, which I don't want to lose, but in the Title VII context, it is a flexible standard depending on the facts of the case. In fact, Judge Elrod authored an opinion earlier this year, the PAW decision, that said exactly that. Title VII was never meant to be rigid or inflexible. And the US Supreme Court said it in Washington County versus Gunther, that we cannot allow a situation where Title VII becomes so rigid that a highly qualified female or a female hired into a unique position can obtain no relief for a gender pay discrimination. Because she cannot point to somebody who's exactly the same as her, or even substantially equal to her. There is no reason to graft the equal work standard from the EPA onto a similarly situated analysis. And here, we would contend there are at least fact issues on whether there are similarly situated comparators. And every excuse the defendants have proffered has fact issues, that she was not a vice chancellor. We have testimony from Mr. Harmon, who oversees the HR department, saying, as a matter of fact, she was a vice chancellor. And for Mr. Coletta, it was enough to be like a vice chancellor to get a car allowance and other perks. But that was not true for Mrs. Muslow. Again, I already addressed the performance issues, so I'll leave that to what I said in opening as far as no contemporaneous documentation. But plaintiffs have established a retaliation claim through the first pathway. That is Mr. Skinner's immediate rescission, which defendants cannot respond to. I apologize, Your Honor. Thank you very much. We ask for reversal and remand. Your cases and all of today's cases are under submission, and the court is in recess until 9 o'clock tomorrow.